# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. Case 9:20-cv-81076-RS

KENNETH JOHANSEN, individually and
on behalf of all other persons and entities
similarly situated,

      Plaintiff,

v.

BLUEGREEN VACATIONS UNLIMITED,
INC., a Florida corporation,

      Defendant.

_____/


## BLUEGREEN VACATIONS UNLIMITED INC.'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

Grace L. Mead
Andrea N. Nathan
Veronica L. De Zayas
Joseph J. Onorati
STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida  33130

September 4, 2020

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

      A.    Parties and Proposed Class ................................................................... 2

      B.    The May 27 and June 2, 2020 Phone Calls......................................... 3

STANDARD GOVERNING A MOTION TO DISMISS .................................................. 7

ARGUMENT ...................................................................................................................... 7

I.     The Operative Call Recordings Must Be Considered on this Motion ................................. 7

II.    The Complaint Does Not and Cannot Plead a Claim a Basis for Article III Standing .......... 9

III.   The Complaint Does Not and Cannot Plead a Claim Under the TCPA Because He Had an Established Business Relationship with Bluegreen ................................................. 11

      A.    Plaintiff does not and cannot adequately allege that Bluegreen made a "telephone solicitation." ................................................................ 12

      B.    The United States District Court for the Southern District of Ohio has rejected this same Plaintiff's same tactics to try to create a TCPA claim as a matter of law.......................................................................................... 18

      C.    The Complaint does not and cannot allege that Bluegreen placed any calls to Plaintiff after he asked not to be called......................................... 19

III.   The Complaint Fails to State a Claim for Treble Damages or Injunctive Relief................ 19

      A.    The Complaint fails to adequately plead facts showing that Bluegreen or its representatives acted "willfully or knowingly." ........................................ 19

      B.    The Complaint fails to adequately plead facts showing any entitlement to injunctive relief. ................................................................................ 20

CONCLUSION.................................................................................................................. 20

CERTIFICATE OF SERVICE ......................................................................................... 22

SERVICE LIST ................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................7

*Bryant v. Avado Brands, Inc.*
187 F.3d 1271 (11th Cir. 1999) ...........................................................................8

*Charvat v. GVN Michigan, Inc.*,
531 F. Supp. 2d 922 (S.D. Ohio 2008), *aff'd,* 561 F.3d 623 (6th Cir. 2009) ...........................15

*Charvat v. Southard Corp.*
18-cv-00190-MHW-CMV (S.D. Ohio Sept. 30, 2019) ...................................14, 15

*Charvat v. Southard Corp.*
18-cv-00190-MHW-CMV (S.D. Ohio Sept. 30, 2019) ...................................14, 15

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019) .........................................................................10

*Cottone v. Jenne*,
326 F.3d 1352 (11th Cir. 2003) .........................................................................13

*Daewoo Motor America v. General Motors*,
459 F.3d 1249 (11th Cir. 2006) ...........................................................................8

*Day v. Taylor*,
400 F.3d 1272 (11th Cir. 2005) ...........................................................................8

*Ela v. Destefano*,
869 F.3d 1198 (11th Cir. 2017) .........................................................................13

*Financial Security Assurance, Inc. v. Stephens, Inc.*,
500 F.3d 1276 (11th Cir. 2007) ...........................................................................8

*In re James*,
406 F.3d 1340 (11th Cir. 2005) .........................................................................14

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
18 F.C.C. Rcd. 14014 (July 3, 2003) .................................................................14

*Johansen v. Nat'l Gas & Elec. LLC*,
2018 WL 3933472 (S.D. Ohio Aug. 16, 2018), case dismissed, 2019 WL
4597740 (6th Cir. Apr. 18, 2019) ......................................................................18

*Johansen v. National Gas & Electric*,
2017 WL 6505959 (S.D. Ohio Dec. 20, 2017) ...............................................2, 18

*Jones v. Montachusett Regional Transit Authority*
2020 WL 1325813 (D. Mass. Feb. 7, 2020) ..........................................................15

*Klay v. United Healthgroup, Inc.*,
376 F.3d 1092 (11th Cir. 2004) ............................................................................20

*Lary v. Trinity Physician Financial*,
780 F.3d 1101 (11th Cir. 2015) ......................................................................19, 20

*LeFrere v. Quezada*,
582 F.3d 1260 (11th Cir. 2009) ............................................................................13

*Leyse v. Bank of Am., Nat'l Ass'n*,
2020 WL 1227410 (D.N.J. Mar. 13, 2020)......................................................10, 11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................................9

*Mamani v. Berzain*,
654 F.3d 1148 (11th Cir. 2011) ..............................................................................7

*Marsh v. Butler County*,
268 F.3d 1014 (11th Cir. 2001) ............................................................................13

*N.R. by Ragan v. School Board of Okaloosa County, Florida*,
418 F. Supp. 3d 957 (N.D. Fla. 2019)...................................................................13

*Salcedo v. Hanna*,
936 F.3d 1162 (11th Cir. 2019) ............................................................................10

*Schaffer v. Weast*,
546 U.S. 49 (2005).................................................................................................13

*SEC v. Graham*,
823 F.3d 1357 (11th Cir. 2016) ............................................................................14

*SFM Holdings v. Banc of America Securities*,
600 F.3d 1334 (11th Cir. 2010) ..............................................................................8

*Shelton v. Merch. Flow Fin. Corp.*,
2018 WL 6839562 (D.N.J. Dec. 31, 2018), *vacated on other grounds*, 2019
WL 2897719 (D.N.J. Apr. 4, 2019) .......................................................................17

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)........................................................................................9, 10

*Summers* v. *Earth Island Inst.*,
    555 U.S. 488 (2009)..................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................8

*Thomas v. George, Hartz, Lundeen, et al.*,
    525 F.3d 1107 (11th Cir. 2008) ..............................................................13

*Thomas-Lawson v. Koons Ford of Baltimore, Inc.*
    2020 WL 1675990 (D. Md. Apr. 6, 2020) ...............................................15

*Zean v. Fairview Health Services*,
    858 F.3d 520 (8th Cir. 2017) .............................................................8, 9

**Statutes**

47 U.S.C. § 227.................................................................................... *passim*

**Rules and Regulations**

47 C.F.R. § 64.1200 ...............................................................12, 13, 16, 17

Fed. R. Civ. P. 12 ..........................................................................1, 7, 8, 13

**Other Authorities**

American Heritage College Dictionary (4th ed. 2002)...................................14

Merriam Webster's Collegiate Dictionary (11th ed. 2005) ...........................14

*Rules and Regulations Implementing the Telephone Consumer Protection Act
(TCPA) of 1991*, 68 Fed. Reg. 44, 144, 159 (July 25, 2003) ...................14

1 *Shorter Oxford English Dictionary* (Oxford University Press 6th ed. 2007) ............................14

Defendant Bluegreen respectfully moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint and submits the following memorandum of law in support thereof:

## INTRODUCTION

Plaintiff Kenneth Johansen is a serial plaintiff who has had a TCPA case previously dismissed in response to an order to show cause because, while engaging in a ruse to try to lure a company into a TCPA violation, he established a business relationship that eliminated his claim.

Dismissal is required in this case too for many of the same reasons, but, under governing Eleventh Circuit precedent, dismissal is required now. The most central allegations in the Complaint involve the May 27 and June 2 calls that Plaintiff alleges violated the TCPA. Under governing Eleventh Circuit precedent setting forth black-letter law on incorporation by reference and applying it in other contexts, the Complaint incorporates those calls by reference in their entirety and they must be considered on this motion to dismiss.

The recordings of the two calls most central to the Complaint—a May 27 call and a June 2 call—establish that an agent called Plaintiff and reminded him he had previously purchased a Bluegreen vacation package that he had not used, that Plaintiff said he expected to go on vacation, that he also sought to explore cruising options, that he supplied email addresses, and that he asked many more detailed questions and supplied extensive information. All told, the two calls about Plaintiff taking a vacation lasted over 50 minutes.

But Plaintiff now sues alleging that Bluegreen violated the TCPA by calling him despite being listed on the national Do Not Call Registry. As part of his claim, Plaintiff must prove that he had no "established business relationship" with Bluegreen. But, as in the Ohio federal case where first many of his claims were dismissed at the pleading stage and then the rest were dismissed under the summary judgment standard, Plaintiff's efforts to create a TCPA claim in

fact defeated it. He created an "established business relationship," which both eliminates his Article III standing and his claim.

Accordingly, the Complaint fails to state the single claim it attempts to assert, and should be dismissed with prejudice because the incorporated documents establish that any amendment would be futile.[1]

## BACKGROUND

### A.    Parties and Proposed Class

Defendant Bluegreen Vacations Unlimited, Inc. ("Bluegreen") is a vacation ownership or timeshare company that offers vacation and travel services. *See* Compl. ¶ 13. As part of its marketing efforts, Bluegreen markets by telephone. *See* Compl. ¶ 14.

Plaintiff Kenneth Johanson alleges that he registered his residential phone number with the National Do Not Call Registry. Compl. ¶ 2. Plaintiff is a serial TCPA plaintiff whose attempts to lure defendants into TCPA violations have instead been rejected as creating an established business relationship. *See, e.g., Johansen v. National Gas & Electric*, 2017 WL 6505959, *3-4 (S.D. Ohio Dec. 20, 2017).

Plaintiff claims here that Bluegreen or its representatives made nine marketing calls to him in May and June of 2020 and that these calls "temporarily deprived" him of the "legitimate use" of his phone. Compl. ¶ 29. He alleges Bluegreen thus violated the TCPA, without actually identifying which subsection of 47 U.S.C. § 227 was violated.

---

[1] "Bluegreen" refers to the named defendant Bluegreen Vacations Unlimited, Inc., and "TCPA" refers to the Telephone Consumer Protection Act. Citations to "Compl. ¶ ___" are to the Complaint in the above-referenced case filed on July 17, 2020, citations to "DE ___" are to docket entries in this case, and references to DE 9 are to an accompanying declaration authenticating and attaching the call recordings that the Complaint incorporates by reference. References to Exhibits 1 and 2 are to the transcripts of the May 27, 2020 and June 2, 2020 calls, which are provided solely for ease of reference. Emphasis is added and citations omitted unless otherwise indicated.

The Complaint seeks to assert a single TCPA claim on behalf of the following proposed class spanning a four-year period:

> All persons in the United States whose (1) telephone numbers were registered on the National Do Not Call Registry for at least 31 days, (2) but received more than one call from or on behalf of Bluegreen (3) within a 12 month period, (4) from four years prior to the filing of the Complaint.

Compl. ¶ 31.

In addition to seeking treble damages for up to $1,500 in damages for each call made, the Complaint seeks an order enjoining Bluegreen from making telemarketing calls, except for emergency purposes, to any residential line. Compl. ¶ 45, p. 7.

**B.      The May 27 and June 2, 2020 Phone Calls**

The Complaint alleges that Bluegreen placed nine telemarketing to Plaintiff—one call on May 26, 2020, six calls on May 27, 2020, and two calls on June 2, 2020. Compl. ¶ 19. The Complaint makes central to its claims allegations about Plaintiff's phone calls with Bluegreen's representative, Compl. ¶ 24, incorporates their contents by reference, and the recordings thus must be considered on this motion, *see* pp. 7-9, below.

The Complaint alleges—as it must to state any claim—that the phone calls placed by Bluegreen or its representatives were "telephone solicitations" rather then made based on an established business relationship. Compl. ¶ 29; *see also* pp. 12-18, below. As for the first, May 26, 2020 call, Plaintiff concedes that, as the first call identified in the Complaint, it cannot create liability. Compl. ¶ 31.

As for the May 27 and June 2, 2020 calls, the accompanying audio recordings establish that they were the opposite of telephone "solicitations": Plaintiff baited the Bluegreen representatives into having nearly-thirty minute conversations with him by repeatedly expressing interest in Bluegreen's vacation packages.

On May 27, 2020, an agent called Plaintiff and reminded him that he had previously purchased a Bluegreen vacation package to stay in Charleston, South Carolina for three days and two nights. Because Plaintiff had not used the vacation package, he had a credit with Bluegreen. On hearing this, Plaintiff exclaimed "wow," DE 9, Ex. A at 00:42; Ex. 1 at 2:22, and engaged with the agent for nearly thirty minutes, repeatedly asking about the vacation package:

- **"I expect" "to go on vacation":** After the agent asked whether Plaintiff expected to go on a vacation in the next year or two, Plaintiff responded: "I expect so, yes." DE 9, Ex. A at 01:06; Ex. 1 at 3:6. The agent then proceeded to confirm that Plaintiff qualified for the package by asking him questions about his income, FICO score, and whether he was in the process of a bankruptcy, all of which Plaintiff answered. DE 9, Ex. A at 01:36; Ex. 1 at 3:13-17.

- **"Let's leave it at Charleston":** After the agent explained to Plaintiff that he would not have to plan anything today but needed to select a temporary location for the vacation, she asked Plaintiff whether he wanted her to "leave it for Charleston" or whether he would "like information on a different location." DE 9, Ex. A 02:48; Ex. 1 at 4:13-15. Plaintiff responded, "Let's leave it at Charleston." DE 9, Ex. A at 02:53; Ex. 1 at 4:16.

- **"Yes, go ahead" and explore cruising options:** Plaintiff tells the agent to continue explaining Bluegreen's cruising options. DE 9, Ex. A at 05:47; Ex. 1 at 6:25.

- **Confirmation of email:** The agent tells Plaintiff that Bluegreen will be sending Plaintiff an updated package and reservation information via email, and Plaintiff confirms his email address. DE 9, Ex. A at 06:52; Ex. 1 at 7:20.

- **"Yeah I have a MasterCard."**—Plaintiff tells the agent that he would like to use his MasterCard to make the temporary reservation deposit to secure his vacation package. DE 9, Ex. A at 08:42; Ex. 1 at 9:10.

- **"May I understand the package a little better. Is there some way I can see what the package is?"**: Plaintiff tells the agent that he would like to receive additional information regarding his updated vacation package. DE 9, Ex. A at 08:53; Ex. 1 at 9:13-15.

- **"Let me give you a different email address"**: Plaintiff gives the agent an alternate email so that he can receive the requested additional information. DE 9, Ex. A at 09:17; Ex. 1 at 9:23-24.

- **"Okay, yeah, Charleston"**: Plaintiff reiterates that he would like to have Charleston, South Carolina listed as the location in order to receive an updated vacation package. DE 9, Ex. A at 11:09; Ex. 1 at 10:20.

- **Plaintiff asks, "Are you still there?"** After a prolonged silence, Plaintiff asks if the agent is still on the line. DE 9, Ex. A at 12:19; Ex. 1 at 10:23-24.

- **"Do you have a web page Stacey while I'm waiting for the email?"** Plaintiff asks for Bluegreen's website so he can review Bluegreen's products and services while he waits for the updated vacation package to arrive by email. DE 9, Ex. A at 12:26; Ex. 1 at 11:3-4.

- **Plaintiff asks, "You want me to send you an email, and you can do a reply?**: Plaintiff asks the agent if he can send an email to the agent because he hasn't received the email containing his updated Bluegreen vacation package. DE 9, Ex. A at 14:27; Ex. 1 at 11:20-21.

- **"Go ahead.  Yea.  Go ahead and send it."**: Plaintiff reiterates that he wants the agent to send him the updated vacation package email. DE 9, Ex. A at 18:58; Ex. 1 at 13:19.

- **"Hey……it arrived!"**: Plaintiff express joy after finally receiving the email he requested twice to receive. DE 9, Ex. A at 22:11; Ex. 1 at 14:14.

- **"Wait a min….okay, it says – okay then Go CRV 3 day, 2 night vacation – what's that?"**: After reviewing the updated vacation package email, Plaintiff asks the agent about a specific product that the agent added at no additional charge to Plaintiff. DE 9, Ex. A at 22:47; Ex. 1 at 14:25 – 15:2.

- **"What is the cruise? . . . that's from where?"**: Plaintiff asks details about the cruise promotion in the updated vacation package email. DE 9, Ex. A at 23:39 to 23:48; Ex. 1 at 15:17-20.

At the end of the May 27 call, after over twenty-five minutes of conversation, the agent said she could not hear Plaintiff anymore, and she would call back. DE 9, Ex. A at 24:57; Ex. 1 at 16:4-6.

On June 2, 2020, a different agent called back and Plaintiff engaged this second agent in *another* almost thirty-minute conversation. Schumer Decl. ¶ 9; DE 9, Ex. B. The agent said she was calling about the Charleston vacation package he previously purchased, which Plaintiff said he could not remember. DE 9, Ex. B at 00:20; Ex. 2 at 1:4-9. The agent said she would close out the vacation package and told Plaintiff to have a nice evening, thus attempting to end the call. DE 9, Ex. B at 00:49; Ex. 2 at 2:19-21. Plaintiff then asked the agent to tell him more about the vacation package, stating "Tell me about it." DE 9, Ex. B at 00:54; Ex. 2 at 2:22. After which, Plaintiff and the agent engaged in a conversation about the vacation package:

- **"I guess Boyne Mountain"**: Plaintiff chooses Boyne Mountain, Michigan, as the location for potential vacation in order to receive an updated vacation package, after confirming he likes to ski, has visited Boyne Mountain before, and had a good time. DE 9, Ex. B at 04:43; Ex. 2 at 5:23.

- **Confirms address:** After listening to the agent discuss the vacation package and confirming his e-mail address, the agent tells Plaintiff, "whenever you call in regarding your account, they will ask you to verify the address on file to make sure you are the account holder," at which point Plaintiff confirmed his address. DE 9, Ex. B at 11:17; x. 2 at 11:12-17.

- **Adds wife to account:** Plaintiff responds to the agent's question as to his marital status. DE 9, Ex. B at 11:33; Ex. 2 at 11:23. The agent tells Plaintiff she is going to add Mrs. Johansen to the account so that when he goes to book travel dates, there are no issues. DE 9, Ex. B at 11:36; Ex. 2 at 11:24 – 12:1. The agent asks Plaintiff for his wife's name, to which he responds, "Rita." DE 9, Ex. B at 11:54; Ex. 2 at 12:9. The agent confirms that she has added Rita to the account. DE 9, Ex. B at 12:00; Ex. 2 at 12:12-15.

- **Confirms phone number:** Plaintiff confirms this is the best phone number to reach him. DE 9, Ex. B at Ex. B at 12:10; Ex. 2 at 12:17.

- **"I have a MasterCard"**: The agent informs Plaintiff he will receive an email confirmation for the vacation package and a second e-mail containing instructions regarding how to book. DE 9, Ex. B at 12:12; Ex. 2 at 12:18 – 13:5. She tells Plaintiff

which credit cards they accept, and he replies that he has a MasterCard. DE 9, Ex. B at 14:52; Ex. 2 at 15:4.

- **Plaintiff asks for Bluegreen's Website:** Plaintiff asks the agent for the Bluegreen website: ""Do you have a website?" DE 9, Ex. B at 15:00; Ex. 2 at 15:7.

-  **"Do you have a travel license number?** Plaintiff asks the agent is she has a travel license number. DE 9, Ex. B at 17:36; Ex. 2 at 16:20-21.

-  **"Okay. Go ahead.":** Plaintiff confirms that the agent can send an email in response to Plaintiff's request for the travel license number. DE 9, Ex. B at 18:34; Ex. 2 at 17:8-15.

After nearly thirty minutes of conversation, Plaintiff announces he is on the Do Not Call Registry, to which the agent replies, "well you're a client of ours," before bringing a supervisor on the phone, who promised to take Plaintiff off the calling list. DE 9, Ex. B at 22:50; Ex. 2 at 19:5-16. The Complaint does not allege that anyone from Bluegreen spoke to him again.

## STANDARD GOVERNING A MOTION TO DISMISS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While a court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## ARGUMENT

### I.    The Operative Call Recordings Must Be Considered on this Motion

In ruling on a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a

7

court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "[T]he district court may consider an extrinsic document if it is (1) central to plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings v. Banc of America Securities*, 600 F.3d 1334, 1337 (11th Cir. 2010).

Like SEC filings in a securities fraud case, the call recordings "are the very documents that are alleged to contain the" legally operative acts "and are not relevant to prove the truth of their contents but only to determine what [was] stated." *Bryant v. Avado Brands, Inc.* 187 F.3d 1271, 1277 (11th Cir. 1999). "Were courts to refrain from considering such documents, complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure." *Id.* And "[f]oreclosing resort to such documents might lead to complaints filed solely to extract nuisance settlements." *Id.* [2] And, as established by the accompanying Declaration of Jarred Schumer, there can be no dispute about the authenticity of the call recordings. *See* DE 9.

Indeed, courts apply these same principles when considering documents that are technically outside of the four corners of the complaint, but nonetheless incorporated therein, when deciding motions to dismiss in TCPA cases. For example, in *Zean v. Fairview Health Services*, 858 F.3d 520 (8th Cir. 2017), the Eighth Circuit Court of Appeals affirmed the district

---

[2] *See also, e.g., SFM Holdings*, 600 F.3d at 1337 (affirming dismissal with prejudice of complaint alleging breach of fiduciary duty and constructive fraud against broker based, in part, on account opening documents that were central to Plaintiff's claim); *Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284-85 (11th Cir. 2007) (affirming dismissal of claim under Securities and Exchange Act that considered insurance policy; describing with approval First Circuit holding that magazine article central to libel claims could be considered because "plaintiffs unquestionably would have had to offer a copy of the article in order to prove their case"); *Daewoo Motor America v. General Motors*, 459 F.3d 1249, 1266 n.11 (11th Cir. 2006) (ruling master transaction agreement and distribution agreement were integral to allegations and therefore district court properly considered them on a motion to dismiss without converting it to a motion for summary judgment); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (affirming dismissal of antitrust claims and consideration of a distribution agreement that, though not attached to the complaint, was "at the very heart" of plaintiff's claim).

court's dismissal of the plaintiff's TCPA complaint based on documents that were outside of the four corners of the complaint but were "embraced by the pleadings," where the plaintiff did not "raise a genuine objection to the authenticity of the documents." *Id*. at 527.

Binding precedent in the Eleventh Circuit on the scope of documents incorporated by reference and their consideration on motions to dismiss mirrors that applied by the Eighth Circuit, and this Court should therefore consider the call recordings here.

## II.    The Complaint Does Not and Cannot Plead a Claim a Basis for Article III Standing

Plaintiff lacks standing to bring his claim because he cannot adequately allege he suffered an injury from calls he welcomed and engaged in as required by Article III of the United States Constitution.

Plaintiff alleges, in conclusory fashion, that he was harmed by Bluegreen's calls because he was "temporarily deprived of legitimate use of [his] phone because the phone line was tied up during the telemarketing calls and [his] privacy was improperly invaded," and the calls "were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff." Compl. ¶ 29. These allegations do not and cannot support Article III standing because the incorporated phone calls reveal that Plaintiff, who had an established business relationship with Bluegreen, welcomed and engaged in the calls and, therefore, did not suffer a concrete injury.

The Supreme Court has explained that "the "irreducible constitutional minimum" to establish Article III standing requires "[t]he plaintiff []have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 497 (2009). In *Spokeo v.*

9

*Robins*, the Supreme Court held that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," and that "Article III standing requires a *concrete* injury even in the context of a statutory violation," which injury "must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49 (2016).

Consistent with *Spokeo*, the Eleventh Circuit Court of Appeals has dismissed cases for lack of Article III standing where a plaintiff has alleged nothing beyond a bare procedural or technical injury. In *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019), the Eleventh Circuit held that consumers who never asked to be placed on a broadcast satellite service provider's internal do-not-call list lacked standing to maintain a claim under the TCPA based on allegations that the provider failed to institute appropriate procedures to maintain an internal list.[3] Likewise, in *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019), the Eleventh Circuit dismissed a TCPA claim premised on the receipt of a single text message for lack of standing, holding that the text message did not rise to the level of concrete injury-in-fact.

Courts confronted with facts similar to those alleged here have concluded there is no injury-in-fact where a plaintiff welcomes and engages in the calls. For example, in *Leyse v. Bank of Am., Nat'l Ass'n*, 2020 WL 1227410 (D.N.J. Mar. 13, 2020), the District of New Jersey held that a plaintiff failed to meet the injury-in-fact requirement and therefore lacked standing to bring a claim under the TCPA against Bank of America. *Id*. at *3-*4. In *Leyse*, the plaintiff was a Bank of America customer who received a telemarketing call on his residential line from Bank of America's agent. *Id*. at *1-*2. The District of New Jersey found that the plaintiff could not

---

[3] The Eleventh Circuit held that "the named plaintiff – who repeatedly asked not to be called – ha[d] standing," but, in vacating the district court's class certification order, differentiated him from "[t]he unnamed members of the putative class who did not ask DIRECTV to stop calling them," because they "were not injured by the failure to comply with the regulation." *Cordoba*, 942 F.3d at 1264.

satisfy the injury-in-fact requirement because the plaintiff "welcomed such calls in his role as a paid investigator aiding his counsel in the preparation of TCPA lawsuits," which the court ascertained from, among other things, "the types of questions he asked [] representatives, his use of a false name and employer, his secret recordings of the calls, and his submission of those recordings to his counsel." *Id*. at *4.

*Leyse* applies with even greater force to require dismissal here because the Plaintiff "welcomed" Bluegreen's calls and then engaged with the agent for almost thirty minutes on two separate calls. *Leyse*, 2020 WL 1227410 at *4. At the beginning of the May 27 phone call, Plaintiff exclaimed "wow!" when the Bluegreen representative told him he still had a credit based on the vacation package he purchased and never used years prior, DE 9, Ex. A at 00:42; Ex. 2 at 2:22, and engaged with the representative by asking questions, providing his e-mail address, and confirming the type of credit card he wished to use for the transaction. DE 9, Ex. A at 06:52, 08:53, 09:17, 12:19, 12:26, 18:58, 22:47, 23:39 to 23:48; Ex. 2 at 7:20, 9:13-15, 9:23-24, 10:23-24, 11:3-4, 13:19, 14:25 – 15:1, 15:16-19. When, at the end of the June 2 phone call, Bluegreen's representative tried to end the phone call and stated "have a nice evening," Plaintiff kept her on the line by asking—with reference to the vacation package—"tell me about it." DE 9, Ex. B at 00:49, 00:54; Ex. 2 at 2:19-22. Only at the end of the second nearly thirty-minute phone call did Plaintiff announce he was on the national Do Not Call Registry and ask not to be called. DE 9, Ex. B at 22:50; Ex. 2 at 19:5-16.. Plaintiff cannot adequately allege he suffered any injury from calls he welcomed and engaged in. *See Leyse*, 2020 WL 1227410 at *4.

Even interpreted most charitably toward Plaintiff, the Complaint alleges only a bare procedural or technical injury, which is no basis for Article III standing. *See* p. 10, above.

**III.     The Complaint Does Not and Cannot Plead a Claim Under the TCPA Because He Had an Established Business Relationship with Bluegreen**

Under the TCPA's statutory framework, Plaintiff's claims must also be dismissed. The May 27 call identified in the Complaint confirmed an established business relationship existed between Plaintiff and Bluegreen, which eliminates liability under the TCPA for that and future calls because none qualify as "solicitations" or telemarketing calls. Only on the June 2, 2020 identified in the Complaint did Plaintiff make clear he was on the Do Not Call Registry and did not want to receive phone calls from Bluegreen. After receiving that notification, Bluegreen never called again.

As the Complaint alleges, "[t]he TCPA and implementing regulations prohibit the initiation of *telephone solicitations* to residential telephone subscribers [on] the Registry and provides a private right of action against any entity that makes those calls . . . ." Compl. ⁋ 12. Plaintiff does not and cannot allege, however, that Bluegreen made a "telephone solicitation" as defined by the TCPA and implementing regulations, which dooms his claim. As discussed below, Plaintiff's allegation that "Bluegreen placed at least nine *telemarketing calls* to Mr. Johansen" in May and June of 2020, Compl. ⁋ 19, fails to meet the definition of "telephone solicitation" because Plaintiff and Bluegreen had an established business relationship.

A.      **Plaintiff does not and cannot adequately allege that Bluegreen made a "telephone solicitation."**

The TCPA and its implementing regulations define the term "telephone solicitation" as "a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person . . . ." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(14). Specifically excluded from this definition, however, are any calls or messages "to any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4)(B); 47 C.F.R. § 64.1200(f)(14)(ii).

The implementing regulations define an "established business relationship" as follows:

> ***The term established business relationship for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication*** between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or ***on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call***, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(5). Thus, Plaintiff must allege that Bluegreen and Plaintiff did not have an established business relationship to state a claim under 47 U.S.C. § 227(c).[4]

The implementing regulations make clear that a consumer's "inquiry" into a telemarketer's services is sufficient to create an established business relationship, even where a purchase or transaction has not occurred. *See* 47 C.F.R. § 64.1200(f)(5). Indeed, "the legislative

---

[4] The TCPA requires Plaintiff to prove the absence of an established business relationship for three reasons: (1) "Absent some reason to believe that Congress intended otherwise…[the courts] conclude that the burden of persuasion lies where it usually falls, upon the party seeking relief." *Schaffer v. Weast*, 546 U.S. 49, 57-58 (2005); *see also Thomas v. George, Hartz, Lundeen, et al.*, 525 F.3d 1107, 1110 (11th Cir. 2008); (2) the *statute excludes from the definition of "telephone solicitation"* and eliminates liability in cases where there is an established business relatonship." 47 U.S.C. § 227(a)(4). The Eleventh Circuit has held that where "the plain meaning" of an "element[] giving rise to liability" requires the plaintiff to prove a related statutory definition, the plaintiff bears the burden of proof. *Thomas*, 525 F.3d at 1111-12; and (3) the TCPA itself does not make showing an "established business relationship" an affirmative defense, but elsewhere does make the existence of adequate policies and procedures an affirmative defense. 47 U.S.C. § 227(c)(5). "It is well-settled that where Congress includes particular language in one section of a statute but omits in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely." *Ela v. Destefano*, 869 F.3d 1198, 1202 (11th Cir. 2017). And "[w]here Congress knows how to say something but chooses not to, its silence is controlling." *Id.* The burden of proving the absence of an established business relationship therefore should lie with the Plaintiff.

Alternatively, even if the presence of an established business relationship is considered an affirmative defense, the Court must nonetheless dismiss. *See LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009) (if a "complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed under Rule 12(b)(6) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003); *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001); *see also, N.R. by Ragan v. School Board of Okaloosa County, Florida*, 418 F. Supp. 3d 957, 987 (N.D. Fla. 2019) ("A complaint is subject to dismissal under Rule 12(b)(6) where its allegations, on their face, show that an affirmative defense bars recovery on the claim.").

history suggests that Congress contemplated that an inquiry by a consumer could be the basis of an established business relationship." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14080 (July 3, 2003).

Though "inquiry" is not defined by the TCPA or the implementing regulations, the Eleventh Circuit has frequently looked to dictionaries to ascertain plain meaning. *See, e.g., SEC v. Graham*, 823 F.3d 1357, 1360-61 (11th Cir. 2016); *In re James*, 406 F.3d 1340, 1343 (11th Cir. 2005). An "inquiry" is commonly defined as "to ask," to "seek knowledge of a thing by asking a question," 1 *Shorter Oxford English Dictionary*, at 1391 (Oxford University Press 6th ed. 2007), or "a request for information," Merriam Webster's Collegiate Dictionary, at 646 (11th ed. 2005). Simply put, it is "a question." American Heritage College Dictionary (4th ed. 2002). The FCC has stated that "inquiries" in the context of the established business relationship are those from which "a consumer might reasonably expect a prompt follow-up telephone call regarding the initial inquiry or application." *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 Fed. Reg. 44, 144, 159 (July 25, 2003).

Consistent with the implementing regulations, district courts routinely dismiss TCPA claims where the calls evidence voluntary two-way communications in which a plaintiff inquires about a company's products or services, thus creating an established business relationship. For example, in *Charvat v. Southard Corp.* 18-cv-00190-MHW-CMV (S.D. Ohio Sept. 30, 2019), the Southern District of Ohio granted the defendant's motion for partial judgment on the pleadings on the ground that Plaintiff created an established business relationship on the fifth call between the Plaintiff and Defendant. *Charvat v. Southard Corp.* 18-cv-00190-MHW-CMV at 13 (S.D. Ohio Sept. 30, 2019). The Court held that Plaintiff's TCPA claims based on the sixth and seventh calls were barred by Plaintiff's voluntary inquiry into the Defendant's products and

services on the fifth call, which created an established business relationship. *Id.* Additionally, the Court noted that it did not matter that the fifth call itself violated the TCPA because the "Plaintiff could have chosen to not engage in any communication at all—i.e. by hanging up" or could have simply "inform[ed] the caller that Plaintiff's number is the NDNCR and he [did] not wish to receive any more phone calls." *Id.* at 10.[5]

As in *Charvat*, Plaintiff here engaged in voluntary two-way communications while repeatedly inquiring about Bluegreen's products and services based on a previous purchase that he made with Bluegreen. Yet, Plaintiff alleges that Bluegreen made "illegal telemarketing calls" to him on May 26, 2020 (one call), May 27, 2020 (six calls), and June 2, 2020 (two calls). Two of those calls—on May 27, 2020 and June 2, 2020—resulted in recorded conversations between Bluegreen's representative and Plaintiff.

As for the May 26, 2020 call, the plain language of the TCPA requires more than one violation of the Do Not Call regulations within a 12-month period to create liability. 47 U.S.C. § 227(c)(5)(B). The May 26 call is the first identified in the Complaint, and Plaintiff therefore concedes that it cannot serve as a basis for liability. *See* Compl. ¶ 31. As the United States District Court for the Southern District of Ohio put it: "the TCPA does not [] allow a plaintiff to bring an action for first call violations," rather, the purpose of the portion of the statute providing the private right of action, § 227(c)(5) "is to prevent repeated telemarketing calls to someone who has told the telemarketer not to call." *Charvat v. GVN Michigan, Inc.*, 531 F. Supp. 2d 922, 926 (S.D. Ohio 2008), *aff'd,* 561 F.3d 623 (6th Cir. 2009).

---

[5] *See also Thomas-Lawson v. Koons Ford of Baltimore, Inc.* 2020 WL 1675990 (D. Md. Apr. 6, 2020) (TCPA claims dismissed where the "allegations on the face of the Complaint demonstrate the existence of an established business relationship, as defined in the statute" as text message acknowledged transaction five months prior); *Jones v. Montachusett Regional Transit Authority* 2020 WL 1325813 (D. Mass. Feb. 7, 2020) ("Even assuming all of Plaintiff's allegations as true, Plaintiff failed to allege that the calls constituted telephone solicitations or that he was a consumer within the meaning of the TCPA").

The May 27, 2020 call—the first call for which the Complaint seeks to impose any liability on Bluegreen—both confirmed that a prior established business relationship existed based on Plaintiff's earlier purchase of a Bluegreen vacation package and then unequivocally created an established business relationship based on Plaintiff's repeated inquiries regarding that vacation package. Indeed, on that call, an agent named Stacey reminded Plaintiff that he previously purchased a vacation package from Bluegreen to go to Charleston for three days and two nights. Because Plaintiff had not used the vacation package, he had a credit with Bluegreen. DE 9, Ex. A at 00:37; Ex. 1 at 2:19-21. On hearing this, Plaintiff exclaimed "wow!" DE 9, Ex. A at 00:42; Ex. 1 at 2:22. He then engaged with the agent for nearly thirty minutes, saying he expected to go on a vacation in the next year or two, supplied updated financial information, selected a temporary location for the vacation, sought to explore cruising options, supplied additional information for both options including his email address, and confirmed receipt of an email about the vacations. At the end of the call, after more than twenty-five minutes of conversation, the agent stated she could not hear Plaintiff anymore, and stated that she would call back. *See* pp. 4-5, above.

The nearly-thirty minute phone call, which lasted only as long as Plaintiff wanted it to and consisted of Plaintiff repeatedly inquiring about Bluegreen's products, was a "voluntary two-way communication." 47 C.F.R. § 64.1200(f)(5). Plaintiff could have easily hung up or simply told the representative that he was on the National Do Not Call Registry and did not wish to receive any more calls. Instead, Plaintiff communicated with the agent for over 25 minutes about updating his vacation package. An existing business relationship therefore existed on the May

27, 2020 phone call and all of the later calls were then not solicitations but instead made as part of that relationship.[6]

As explained above, on June 2, 2020, Plaintiff and a different agent engaged in another nearly-thirty minute conversation. DE 9, Ex. B. The agent said she was calling about the Charleston vacation package, which Plaintiff stated he could not remember, so the agent said she would close out the vacation package and told Plaintiff to have a nice evening, attempting to end the call. Plaintiff then asked the agent to tell him more about the vacation package, stating "Tell me about it." At length, Plaintiff and the agent then discussed the vacation package, including details such as a new destinations in Michigan, confirming Plaintiff's email address, confirming his wife's name, confirming his phone number, and his additional, detailed questions. *See* pp. 6-7, above. Only after nearly thirty minutes of conversation, did Plaintiff announce that he is on the Do Not Call Registry. DE 9, Ex. B at 22:50; Ex. 2 at 19:5-6. The nearly-twenty-minute June 2, 2020 call further confirms that Plaintiff and Bluegreen had an established business relationship.

If there were any doubt, in both phone calls, Plaintiff confirmed his email address and then provided the agent with a second e-mail address to receive more details about the vacation package. DE 9, Ex. A at 06:52, 09:17,14:27; Ex. 1 at 7:20, 9:23-24, 11:20-21; DE 9, Ex. B at 11:17; Ex. 2 at 11:12-17. At least one court has held that providing an email address "reasonably invites the company to contact the individual in the future about the services pitched on the sales call." *Shelton v. Merch. Flow Fin. Corp*., 2018 WL 6839562, at *7 (D.N.J. Dec. 31, 2018), *vacated on other grounds*, 2019 WL 2897719 (D.N.J. Apr. 4, 2019). Indeed, in the first call, Plaintiff even went so far as to ask if he could email Bluegreen so he could receive the

---

[6] The subsequent calls were all made within the time 3-month time limitation provided in 47 C.F.R. § 64.1200(f)(5). Compl. ⁋ 19.

information more quickly, and then confirmed receipt of the e-mail that the representative sent to him during the call.

**B.      The United States District Court for the Southern District of Ohio has rejected this same Plaintiff's same tactics to try to create a TCPA claim as a matter of law.**

Another district court presented with the same issues in a case filed by the same Plaintiff derided Plaintiff for the same "deceptive conduct" he has engaged in here. In *Johansen v. National Gas & Electric LLC*, the Plaintiff filed a TCPA complaint based on violation of the National Do Not Call Registry and the defendant moved to dismiss the complaint and to compel arbitration. 2017 WL 6505959, *3-4 (S.D. Ohio Dec. 20, 2017). The court ordered the Plaintiff to show cause why his complaint should not be dismissed as nothing more than a "ruse" because it appeared that Plaintiff's "deceptive conduct" gave the company an "objectively reasonable basis for believing that he had established a business relationship" with them by virtue of his communications and inquiries on several phone calls. *Id*. The court further commented that his admissions—"pos[ing]" as an interested customer, and "play[ing] along 'as he typically does'" —"cast serious doubts on his fitness to serve as an adequate class representative" and "undermine the viability of his cause of action under the TCPA." *Id*. at *3. Applying the standard applicable to motions for summary judgment, which construes the "evidence, all facts, and any inferences that may permissibly be drawn from the facts . . . in the light most favorable to [Plaintiff]," the court ultimately found that the Plaintiff "has not shown cause and that this action should be dismissed." *Johansen v. Nat'l Gas & Elec. LLC*, 2018 WL 3933472, at *2 (S.D. Ohio Aug. 16, 2018), case dismissed, 2019 WL 4597740 (6th Cir. Apr. 18, 2019).

This Court should also dismiss Plaintiff's "ruse" of a Complaint here. Because the May 27, 2020 call shows an established business relationship existed between Plaintiff and Bluegreen,

Plaintiff does not and cannot adequately allege that Bluegreen made a "telephone solicitation." Plaintiff's claim therefore fails.

**C.     The Complaint does not and cannot allege that Bluegreen placed any calls to Plaintiff after he asked not to be called.**

On the June 2, 2020 phone call, Plaintiff announced—after a combined fifty-two minutes of conversation—that his number was on the national Do Not Call Registry and he did not want Bluegreen to call him. DE 9, Ex. B at 19. But the Complaint identifies no basis for liability after June 2 because it does not and cannot allege that Bluegreen ever called Plaintiff again.

**III.   The Complaint Fails to State a Claim for Treble Damages or Injunctive Relief**

**A.     The Complaint fails to adequately plead facts showing that Bluegreen or its representatives acted "willfully or knowingly."**

The TCPA creates a private "action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(c)(5)(B). The Complaint does not attempt to assert a claim for actual damages— there were none. The Complaint does attempt to seek treble damages of up to $1500 for each violation. Section 227(c)(5)(C) of the TCPA provides: "If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times" $500 for each violation. 47 U.S.C. § 227(c)(5)(C).

The Eleventh Circuit has ruled that, to recover treble damages under the TCPA, "[t]he requirement of 'willful[] or knowing[]' conduct requires the violator to know that he was performing the conduct that violates the statute." *Lary v. Trinity Physician Financial*, 780 F.3d 1101, 1107 (11th Cir. 2015). It reasoned: "If we interpreted the statute to require only that the violator knew he was making a 'call' or sending a fax, the statute would have almost no room for violations that are not 'willful[] or knowing[].'" *Id.*

Aside from the conclusory and formulaic recitations of the phrase "willfully or knowingly" or variants that must be disregarded, *see* Compl. at ¶ 44, the Complaint also fails to plead any facts showing that any Bluegreen representative believed that she was violating the TCPA. Thus, Plaintiff's claim for treble damages of $1500 for each violation must be dismissed.

**B.**     **The Complaint fails to adequately plead facts showing any entitlement to injunctive relief.**

For a plaintiff to be entitled to the remedy of a preliminary (or permanent injunction), the plaintiff must establish: (1) a substantial likelihood of success on the merits (or success on the merits); (2) irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause to the opposing party; and (4) that, if issued, the injunction would not be adverse to the public interest. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004).

Putting aside that Plaintiff here cannot succeed on the merits, which independently defeats his ability to receive injunctive relief, the request founders on every other element as well. The Complaint does not establish any sort of irreparable injury that could not be remedied by statutory damages, that such injury outweighs any damage an injunction would cause to Bluegreen, or how issuing one would be consistent with the public interest. Indeed, in affirming the dismissal of a request for an injunction in another TCPA case, the Eleventh Circuit has reasoned that, because of the availability of statutory damages, the plaintiff "established neither a likelihood of future harm nor the inadequacy of his remedy at law." *Lary*, 780 F.3d at 1107. Here, Plaintiff's request for an injunction must be dismissed for the same reasons.

**CONCLUSION**

The Complaint must be dismissed. Because any amendment would be futile, it should be dismissed with prejudice.

Date:  September 4, 2020

Respectfully submitted,

By: /s/ *Grace L. Mead*
GRACE L. MEAD
Florida Bar No. 49896
gmead@stearnsweaver.com
ANDREA N. NATHAN
Florida Bar No. 16816
anathan@stearnsweaver.com
VERONICA L. DE ZAYAS
Florida Bar No. 91284
vdezayas@stearnsweaver.com
JOSEPH ONORATI
Florida Bar No. 92938
jonorati@stearnsweaver.com
STEARNS WEAVER MILLER WEISSLER
   ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida  33130
Telephone: 305-789-3200
Facsimile:  305-789-3395

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of September, 2020, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record identified on the attached Service List

via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/   *Veronica L. de Zayas*
Veronica L. de Zayas

## SERVICE LIST

Avi R. Kaufman, Esq.
kaufman@kaufmanpa.com
Rachel E. Kaufman, Esq.
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Counsel for Plaintiff and the putative class*