## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| KENNETH JOHANSEN, individually and on behalf of a class of all persons and entities similarly situated, | Case No. 9:20-cv-81076-SMITH |
| Plaintiff | **CLASS ACTION** |
| vs. | |
| BLUEGREEN VACATIONS UNLIMITED, INC., a Florida corporation, | |
| Defendant. | |

## <u>PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>

## I.      INTRODUCTION

This one count Telephone Consumer Protection Act case is well-suited for class certification because it involves a single telemarketing campaign that Bluegreen hired a single telemarketer to perform. Bluegreen and its telemarketer have produced lead lists, call records, contracts, and other documents showing that, at Bluegreen's direction, the telemarketer made millions of telemarketing calls to numbers supplied by Bluegreen to promote Bluegreen's products and services.  Plaintiff's expert has determined that than 250,000 of these calls were made to more than 19,000 telephone numbers registered with the National Do Not Call Registry. Bluegreen obtained each of these consumer's telephone numbers either (1) prior to 2013, in connection with purported vacations or vacation transactions, or (2) from someone else as a referral, and Bluegreen has no evidence of consent or an established business relationship to call any of them, including the Plaintiff.

The central and determinative issues in this case will be (1) whether calls were made to telephone numbers registered with the National Do Not Call Registry, (2) whether the calls were "telephone solicitations" under the TCPA, and (3) whether Bluegreen is vicariously liable for the calls that its telemarketer made.  Mr. Johansen and proposed class members' claims and Bluegreen's defenses can be established through class wide proof, including the lead lists, call records, contracts, and testimony from the telemarketing participants and the parties' experts. Certification of Plaintiff's proposed class is therefore warranted.

## II.      THE TELEPHONE CONSUMER PROTECTION ACT

"Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227 (2012)). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.').

"Private suits can seek either monetary or injunctive relief. *Id.* If damages are sought, the plaintiff is entitled to receive the greater of either his actual loss or statutory damages up to $500…. This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

The "model of clarity" that is the National Do Not Call Registry has also been one of the federal government's most popular programs. According to the Federal Trade Commission's December 2019 Biennial Report to Congress, the National Do Not Call Registry currently has more than 239,000,000 active registrations. *See* "FTC Issues Biennial Report to Congress on the National Do Not Call Registry" *available at* https://www.ftc.gov/news-events/press-releases/2019/12/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited Feb. 17, 2021).

The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

In this action, Plaintiff's claim is brought under 47 U.S.C. § 227(c), which provides a private right of action to any consumer who receives two or more "telephone solicitations" within a twelve month period to a residential telephone number that was registered with the National Do Not Call Registry more than 30 days before the calls.  47 C.F.R. §§ 64.1200(c)(2), (e); *see* 47 C.F.R. § 64.1200(f)(14) ("The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person …").

Prior express written consent is a defense to a Do Not Call registry claim.  *Id*. at §§ (c)(2)(i)-(iii).  As is the existence of an established business relationship.  *Id*. at § (f)(5) ("The term established business relationship for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.").

The TCPA imposes up to $500 in statutory damages per violation of the National Do Not Call Registry provision, and provides for treble damages if the company acted "willfully or knowingly."  47 U.S.C. § 227(c)(5).

Notably, under the TCPA a party may be liable pursuant to tort-related vicarious liability rules, including actual authority, apparent authority, and ratification principles.  *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1754628, at *6 (M.D. Fla. Apr. 17, 2015); *see also In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6588 (¶ 1) (FCC 2013) (holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers").

### III.    STATEMENT OF FACTS

**A.     Bluegreen Hired a Telemarketing Company to Make the Calls to the Proposed Class and Has Provided Records of the Calls.**

This case is straightforward.

In November 2016, Bluegreen hired Schumer Management & Consulting, LLC ("Schumer") to make telemarketing calls promoting Bluegreen's vacation products to consumers whose contact information Bluegreen supplied to Schumer.  From 2016 until after Schumer called the Plaintiff to promote Bluegreen's products, the relationship between Bluegreen and Schumer worked as follows:

- Schumer called only numbers that Bluegreen instructed it to call, which Bluegreen transmitted to Schumer through a File Transfer Protocol website.

- Schumer made all calls using scripts that Bluegreen had drafted and/or approved with the exception of minor non-substantive changes.

- Bluegreen was exclusively responsible for ensuring that any numbers called by Schumer were permitted to be called in compliance with federal or state telemarketing laws.

- During calls, Schumer promoted only the offers that Bluegreen directed it to promote, and when there was a sale, Schumer used Bluegreen's merchant terminal to provide the information for Bluegreen to fulfil the contract.

- Starting in 2017, Bluegreen required that Schumer upload calling records for calls made by Schumer to the numbers supplied by Bluegreen through a File Transfer Protocol website.

- All of the calls in the records uploaded through the through File Transfer Protocol website on the Chase Data Corp platform were made for the same singular purpose – to market Bluegreen's products and services.

*See* Declaration of Schumer's owner and records custodian Jared Schumer [attached as Exhibit 1] at ¶¶ 11-18.

This course of dealing was entirely consistent with the written Vacation Package Marketing Agreement between Bluegreen and Schumer [attached as Exhibit 2], which ███████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████ Vacation Package Marketing Agreement at p. 1 (emphasis in original). The

contract also specified the "█████████████" that Schumer was allowed to operate from, and █████████████████████████████████████████. *Id.* at p. 6; *see* Bluegreen's response to Plaintiff's first interrogatories [attached as Exhibit 3] at no. 3 ("The agreement between Bluegreen and Schumer Management & Consulting, LLC, Bates No. BG000001-BG000033, identifies the vendor and the relevant work it performs.").

As for the leads Bluegreen supplied Schumer to call, Bluegreen obtained them from only a handful different channels:

- Past guests;
- Guest and owner-provided referrals;
- Sweepstakes entrants; and
- Customers who had previously allegedly purchased a tour or mini-vacation.

Bluegreen's response to Plaintiff's third interrogatories [attached as Exhibit 4] at no. 1; *see also* Bluegreen's response to Plaintiff's second interrogatories [attached as Exhibit 5] at nos. 1-2, explaining that, to the extent either defense is valid, Bluegreen has the same basis for its consent and established business relationship defenses as to each potential class member.

**B.  <u>The Plaintiff's Contacts from Bluegreen.</u>**

The Plaintiff received a telemarketing call from Bluegreen on May 26, 2020 in which he did not express any interest in the services offered. *See* Declaration of Plaintiff Kenneth Johansen [attached as Exhibit 6] at ¶ 8. The Plaintiff then received another call on May 27, 2020. *Id*. at ¶ 9. To conclusively identify the party that was contacting him illegally, the Plaintiff listened to the sales pitch of the telemarketer for Bluegreen. *Id.* at ¶ 10. The call was then terminated. *Id.* at ¶ 11. The Defendant then contacted the Plaintiff at least four more times that day. *Id.* at ¶ 12. The Plaintiff was then called again on June 2, 2020 without any reference to the calls on May 26 and May 27 as part of the solicitation. *Id.* at ¶ 13.

The calls came from two Caller ID numbers: (216) 279-5134 and (419) 458-5578. *Id.* at ¶ 14. Each of those numbers have had complaints associated with them. First, the website NoMoRobo, winner of the FTC's challenge to stop robocalls, has labeled calls from (419) 458-

5578 as robocalls. *See* https://www.nomorobo.com/lookup/419-458-5578 (last visited Feb. 27, 2021). Second, consumers complaining about calls from (216) 279-5134 have labeled them as "verified ROBO call." *See* https://800notes.com/Phone.aspx/1-216-279-7356 (last visited Feb. 27, 2021). The association of these Caller ID numbers with complaints about "robocalls" further supports the allegations of *en masse* marketing, which has been confirmed in discovery.

Prior to receiving the calls at issue, Plaintiff never knowingly provided his phone number to Bluegreen, had not transacted with Bluegreen in many years, if ever, and had never provided his written consent to receive telemarketing calls from them.  Johansen Decl. at ¶ 16. Notwithstanding, Bluegreen claims that "[o]n or about November 30, 2010, Plaintiff purchased a Bluegreen vacation package from The Welcome Center in Daytona Beach, Florida."[1]  *See* Bluegreen's amended response to Plaintiff's first interrogatories [attached as Exhibit 7] at no. 6.  Although Bluegreen also claims that "[w]hen making a purchase of a Bluegreen vacation package at The Welcome Center, purchasers signed acceptance forms containing consent to receive calls," Bluegreen has not provided a single document evidencing any such consent for Plaintiff or any other consumer whose telephone number Bluegreen obtained from any source prior to 2013, the year the TCPA's written consent requirement went into effect. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 27 F.C.C.R. 1830, 1831 ¶ 2, (Feb. 15, 2012) ("Specifically, in this Order, we . . . revise our rules to require prior express written consent."). In fact, ███████ ██████████████████████████████████████████████████████████ ████████████████████████. *See* Sales Receipt dated June 28, 2013 [attached as Exhibit 8].

---

[1] Importantly, as explained in the Schumer Declaration at ¶ 5(d), the consumer leads that Bluegreen supplied to Schumer and that Schumer produced as part of this litigation all include the date of the consumer's prior purchase from Bluegreen, if any, in the "Age_Range" field. Consistent with this, and Bluegreen's explanation of where it obtained the Plaintiff's contact information, the lead information supplied by Bluegreen to Schumer for the Plaintiff indicates an "Age_Range" of November 30, 2010.  Declaration of Plaintiff's expert Aaron Woolfson [attached at Exhibit 9] at ¶ 35.

The Plaintiff issued a subpoena to The Welcome Center, who responded to the subpoena confirming that there are no records of Plaintiff or any other consumer whose lead was generated for Bluegreen long, long ago providing consent to receive calls from or on behalf Bluegreen:

> We have none of the data that you are requesting. We do not hold records two years after billing has taken place. This dates back 10 years. All records, on any traveler, do not belong to our company. We process the paperwork and track the bill. We are service providers. We do not sell or call outbound or take any money from consumers directly. The Welcome Center is a processing center for hotel/resort reservations. We do not see Kenneth Johansen in our data base in the last 24 months. The Welcome Center is simply a processing center sending out confirmation letters and reservations for companies that promote hotel or resort accommodations. We do not sell anything to consumers or have any direct customer contact.

*See* The Welcome Center's subpoena response [attached as Exhibit 10].[2]

## C. **Bluegreen has a long history of failing to comply with the TCPA.**

Not surprisingly, discovery has revealed that Bluegreen has been the subject of many TCPA complaints, like Plaintiff's, over the years. Indeed, Bluegreen has been subject to nearly *twenty TCPA lawsuits, a series of Better Business Bureau complaints, and government regulatory investigations* related to its telemarketing system during the last five years. These complaints are substantively similar in that they all involve unwanted telemarketing solicitations, like those received by the Plaintiff:

Consumer's Original Complaint :

Received two harassing phone calls. Told them 2nd time that no means no and he continued to badger me and for me to explain why. Was a supervisor. I put my name into a drawing for an atv at Tinseltown cinema in Erie, PA. I received a call I had one a promotion from Bluegreen. Person haggled me into accepting a vacation/timeshare. I said no several times, hung up. Told them no more calls. Received another call today, April 20, 2017. Supervisor immediately wanted to know why I would turn down this vacation. I told him that he needed to accept that no man no. He said he did not understand that. I said Are you serious that your talking to me in that manner. He continued to question me, as is practice of debt collector. I told him to take me off his list. He said there was none, etc. I asked for a supervisor. He said it was he. I told him to quit calling my number, which has shown up countless times. This in unacceptable and left me upset and annoyed. He was almost laughing and still prodding me.

---

[2] The contract between Bluegreen and The Welcome Center makes clear that in ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Marketing Agreement Term Sheet and Marketing Agreement [attached as Exhibit 11]. Bluegreen terminated the relationship with The Welcome Center in 2011, but continued to make calls to the telephone numbers it had purchased from them, including Plaintiff's, in the summer of 2020. *See* The Welcome Center termination letter [attached as Exhibit12].

They call me almost every day (sometimes more than once) to try to sell me something, horribly rude people. They won't remove me form their call list, they say it's not a call list.

This POS continues to call me I never solicited this business nor would I ever. I had made complaints to this office and you failed to stop it. One more time I have gone to bluegrass and asked that they stop since you will not stop them. When you call them back to tell them to stop, they want you to leave a message and they will call you back. This is so bluegrass vacations can say I called them and ask them to call me back. You have been told in the past about this company that is high risk fraud. Just let me know you will not stop these harassing phone calls or robocalls. I am sick and tired of this not stopping. This is my one and only time going to the attorney general office to get these bastards to stop. These calls are annoying and they disrupt my life. These robocalls are interrupting and intrusive. I will call them back and will leave them a nasty  voice mail if they call one more time and hope they will not make another call again.

*See* sample consumer complaints [attached as Composite Exhibit 13]; compilation of the lawsuits that Bluegreen has produced to date in discovery alleging TCPA violations [attached as Composite Exhibit 14].

### D. **The Plaintiff's Expert's Analysis.**

The Plaintiff has retained database and telecommunications expert Aaron Woolfson to identify call recipients who received more than one outbound call from Schumer on behalf of Bluegreen within a 12 month period prior to their making any inbound call for Bluegreen, to their residential telephone numbers registered with the National Do Not Call Registry, and whose phone numbers were obtained by Bluegreen either (1) prior to 2013, at the time of a purported vacation, vacation purchase, or contemplated vacation purchase, or (2) as a referral from someone else. *See* Woolfson Decl. [Exhibit 9]. To do so, Mr. Woolfson analyzed the calling data produced by Bluegreen and the lead lists provided by Bluegreen to Schumer (and produced by Schumer), and was able to identify 19,772 such telephone numbers that received a total of 280,440 connected calls, including the Plaintiff who received more than 2 such calls in an 8 day period in 2020. *Id.* at ¶¶ 30, 35. Mr. Woolfson also analyzed the numbers called to determine which telephone carriers serviced the 19,772 telephone numbers at the time they were called to facilitate subpoenas to those carriers for information identifying whether each such line was residential or non-residential at the time of the calls. *Id.* at ¶ 31-34.

### IV.    PROPOSED CLASS DEFINITION

Mr. Johansen requests that the Court certify the following proposed class under Federal

Rules of Civil Procedure Rules 23(a) and (b)(3):

> All persons within the United States who, (a) from October 1, 2018 through July 8, 2020; (b) received more than one outbound call from Schumer for Bluegreen within a 12 month period prior to making any inbound calls; (c) to their residential telephone numbers registered with the National Do Not Call Registry; and (d) whose phone numbers were obtained by Bluegreen either (1) prior to 2013, at the time of a purported vacation, vacation purchase, or contemplated vacation purchase, or (2) as a referral from someone else.

Excluded from the class are all persons who made one or more inbound calls to Schumer for Bluegreen before receiving at least two outbound calls from Schumer for Bluegreen.  Also excluded from the class are:  (1) any Judge or Magistrate presiding over this action and members of their families; (2) Bluegreen, its subsidiaries, parents, successors, predecessors, and any entity in which Bluegreen or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Bluegreen have been fully and finally adjudicated and/or released.

## V.     MEMORANDUM OF LAW

As a remedial statute that was passed to protect consumers from unwanted telephone calls, the TCPA is construed broadly to benefit consumers. *See Gurzi v. Penn Credit Corp.*, 449 F. Supp. 3d 1294, 1299 (M.D. Fla. 2020) (citing *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013)).  "If proposed interpretations of the TCPA are equally plausible, the scales tip in favor of the consumer." *Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563, 576 (W.D. Pa. 2017).

"In light of the fact that Rule 23 provides a district judge with great flexibility to adopt appropriate procedures, certify conditionally, or decertify a class in later stages of litigation, … judges should err in favor of certification." *DeLeon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214, 1218 (11th Cir. 2007).

A class should be certified if it satisfies the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *See* Fed. R. Civ. P. 23; *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321-22 (11th Cir. 2008). To meet Rule 23(a)'s prerequisites, a plaintiff must demonstrate that:

1) The class is so numerous that joinder is impracticable;

2) There are questions of law or fact common to the class;

3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1-4).

Here, the Plaintiff seek certification under Rule 23(b)(3). *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). Rule 23(b)(3) further mandates that Plaintiff demonstrate that common questions of law or fact "predominate over any questions affecting individual members" and that maintaining a class action "is superior to other available methods" of adjudication. Plaintiff's proposed class meets all of these requirements.

## A. The Requirements of Rule 23(a) are Satisfied.

### 1. The Class is Sufficiently Numerous Because It Includes Thousands of Class Members.

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity is satisfied where Plaintiff identified at least 31 class members "from a wide geographical area"). Here, the Plaintiff's expert has identified more than 19,000 individuals registered on the National Do Not Call Registry that received multiple calls from Schumer for Bluegreen whose telephone numbers were collected in connection with vacations or vacation purchases prior to 2013, or whose numbers were provided as a referral by someone else. Woolfson Decl. at ¶ 30.  Numerosity is therefore satisfied.

### 2. Numerous Common Questions Exist Regarding Bluegreen's Liability.

Rule 23(a)(2) next requires that there is "a common question of law or fact among the members of the class." As the Supreme Court has explained, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" such that "all their claims can be productively litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The common questions must generate common "*answers*" that are "apt to drive the resolution of the litigation." *Id.* (citation omitted). Commonality is thus satisfied where the claims of all class members "depend upon a common contention ... of such a nature

that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

Under this "relatively light burden," the class action "must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)). Accordingly, it is "not just the presence of common questions that matters, but the ability of the class action device to 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 695 (S.D. Fla. 2015).

The common questions of law and fact to be determined in this action include whether the calls to class members on Bluegreen's behalf were made to residential telephone numbers registered on the National Do Not Call Registry, for telemarketing purposes, and without consent. *See, e.g., Cordoba v. DIRECTV, LLC*, 320 F.R.D. 582, 600 (N.D. Ga. 2017) *reversed in part on other grounds* (certifying National Do Not Call Registry class and finding commonality satisfied by the question of "whether all of the calls at issue for the NDNC class were made to telephone numbers on the NDNC registry"). Furthermore, whether Bluegreen's calling conduct was willful or knowing entitling class members to treble damages under the TCPA is a common question because class members received calls made in the identical way, for the identical purpose, and based on their telephone numbers having been obtained in one of two ways – neither of which involved the provision of consent to Bluegreen to make telemarketing calls. *See, e.g., Northrup v. Innovative Health Ins. Partners, LLC*, 329 F.R.D. 443, 453 (M.D. Fla. 2019) (finding that the question of whether TCPA violations were willful or knowing was a common question for the class). There's also the overarching common question of whether Bluegreen is vicariously liable for the calls it hired Schumer to make to leads Bluegreen provided to Schumer. *See, e.g., Mohamed v. Off Lease Only, Inc.*, 320 F.R.D. 301, 313 (S.D. Fla. 2017) (finding that the named defendant's vicariously liability for calls made by an entity it contracted with was a common question and certifying claims under the TCPA); *see also Krakauer,* 925 F.3d at 656 ("Put simply, a plaintiff suing under § 227(c)(5) is likely to be in the same position as a great many other people and can rely largely on common proof to make out his claim….").

These legal and factual questions are shared by class members and will be resolved based on common proofs, including Bluegreen's call logs and leads lists, the parties' respective

experts' testimony, evidence of the repeated complaints received by Bluegreen regarding their telemarketing practices, Bluegreen's contract with Schumer, and other documents and testimony relating to the direction from Bluegreen to Schumer to make calls.  Additionally, the absence of any evidence of written consent or a temporally relevant established business relationship from any class members – whose telephone numbers Bluegreen obtained either as part of a vacation or vacation purchase prior to 2013, before the TCPA's broad, written consent requirement was implemented, or as a referral from someone else – will allow for the resolution of Bluegreen's consent and established business relationship defenses in a single stroke.

### 3. The Plaintiff's Claim is Typical Because he Received Telemarketing Calls from Bluegreen on his Residential Phone Number Registered with the National Do Not Call Registry.

Generally, typicality is satisfied where the claims are based on the same legal remedial theory. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality is satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Yet, the "[c]lass members' claims need not be identical to satisfy the typicality requirement; rather, there need only exist 'a sufficient nexus between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World Co.,* 692 F.3d 1212, 1216 (11th Cir. 2012).  The required nexus exists "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *See Ault,* 692 F.3d at 1216.  Typicality is satisfied in TCPA cases where the claims are based on the defendant's homogenous telemarketing. *See McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 169-70 (S.D. Cal. 2019) (Plaintiff "raise claims and legal theories typical of the class they seek to represent—a class of individuals who did not consent to receive calls to their cellular phones made by or on behalf of Royal").

The Plaintiff here has "allege[d] that the putative class members were also wrongly contacted by Defendant," making their claims "reasonably coextensive with the putative class members." *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 242 (D. Ariz. 2019) (certifying TCPA class). The Plaintiff received 9 telemarketing calls from Schumer for Bluegreen in an 8

day period in 2020 on his residential telephone number registered with the National Do Not Call

Registry based on a purported vacation purchase from Bluegreen in November 2010. *See*

Woolfson Decl. at ¶ 35 (identifying the "Age_Range" for Plaintiff's lead as November 30,

2010). All class members, including Plaintiff, were called as a result of Bluegreen obtaining

their number either (1) as part of a vacation or actual or contemplated vacation transaction prior

to 2013, or (2) as a referral from someone else. *See* Woolfson at ¶ 30. And, to date, Bluegreen

has not identified the existence of a single document that could represent written consent or a

basis for finding the existence of an established business relationship sufficient to call any of

them years later.

Mr. Johansen therefore has the same claims as all other members of the proposed class.

### 4.   Plaintiff and his Counsel Have Demonstrated the Commitment and Competency Needed to Prosecute the Class Claims.

Rule 23(a)(4) requires that the class representative can fairly and adequately protect and

represent the interests of each member of the class. "[A] class representative must be part of

the class and possess the same interest and suffer the same injury as the class members."

*Amchem* at 625-26 (1997). Rule 23(a)(4) "requires courts to ask whether Plaintiff's interests

are antagonistic to the interest of other members of the class." *Id*. The determinative factor "is

the forthrightness and vigor with which the representative party can be expected to assert and

defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried

Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted).

Plaintiff has no conflicting interests with class members. In fact, by investigating,

filing, and vigorously prosecuting this case, he has demonstrated a desire and ability to protect

class members' interests. Plaintiff has worked with counsel to develop the class claims,

responded to multiple waves of requests for production and interrogatories, and will be

deposed. *See* Johansen Decl. [Exhibit 6].

Just as the Plaintiff is committed to the prosecution of this case, so too are his lawyers,

who request appointment as class counsel. Plaintiff's counsel have extensive experience in

consumer rights and class action litigation. Plaintiff's counsel have litigated multiple cases

nationally (in several federal district courts) and have the resources necessary to conduct

litigation of this nature. Plaintiff's counsel have been appointed as lead class counsel in several

TCPA cases. *See Ikuseghan v. Multicare Health Sys.*, No. C 14-5539 BHS, 2015 WL 4600818, at *6 (W.D. Wash. July 29, 2015) (finding adequacy satisfied where Plaintiff's counsel served as counsel "in other class action lawsuits, including a previous TCPA case"). Plaintiff's counsel have dedicated substantial time and financial resources to the investigation and prosecution of the claims at issue and will continue to do so.  *See* Declaration of Avi R. Kaufman [attached as Exhibit 15]; Declaration of Anthony Paronich [attached as Exhibit 16].

## B.       Rule 23(b)(3) Is Satisfied.

Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and … a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied for the proposed class in this case.

## 1.   Common Issues Predominate.

Predominance is satisfied when "the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). "[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation omitted). A plaintiff does not need to "prove that each 'element of her claim is susceptible to classwide proof.'" *Amgen,* 568 U.S. at 469 (citation and alterations omitted).

TCPA claims, by their nature, involve large numbers of Plaintiff who received identical telemarketing contacts, a small number of defendants, and a common course of conduct that affected each plaintiff in the same way. Indeed, as another circuit court recently explained when affirming the certification of a class of individuals called while on the National Do Not Call Registry in violation of the TCPA and a subsequent jury verdict:

> Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition. In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an

incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer,* 925 F.3d at 656.

And that is precisely the circumstance here. Bluegreen obtained proposed class member telephone numbers either (1) prior to 2013, as part of a vacation or vacation transaction, or (2) from someone else as a referral, and then had Schumer call them repeatedly to promote Bluegreen's vacation products. Class members were harmed in the same way, through the receipt of unsolicited, telemarketing calls on their National Do Not Call Registry protected telephone numbers, and their damages are based on the same fixed arithmetic calculation.  *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) (holding that Article III standing is satisfied where, as here, "the class [is] based on calls to individuals on the [National Do Not Call Registry], since those whose numbers are on the Registry and nevertheless received marketing calls suffered an injury that is traceable to [the defendant's] misconduct").

The predominance analysis "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton*, 563 U.S. 804, 809 (2011). Courts routinely certify TCPA claims because the elements are amenable to class wide proof. Each element of the Plaintiff's claim focuses on the conduct of Bluegreen. Plaintiff must establish three elements to prove his claim: (1) that he received 2 or more calls by or on behalf of Bluegreen in a twelve month period, (2) for telemarketing purposes, (3) to his telephone number registered with the National Do Not Call Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. 64.1200(c)(2). Each of these elements and the other key issues in this case will be proven with common evidence, or, in the case of Bluegreen's consent and established business relationship defenses, by the common absence of any evidence.

<u>Calls to National Do Not Call Registry Protected Phone Numbers</u>. Common evidence exists to show that calls were made to residential telephone numbers registered with the National Do Not Call Registry. *Cordoba*, 320 F.R.D. at 598 (N.D. Ga. 2017) ("whether Plaintiff's list of persons in the IDNC and [National Do Not Call Registry] class lists will persuade a factfinder on the merits 'is simply a common question of fact'").  Expert Aaron Woolfson has identified the calls made by Schumer to leads obtained by Bluegreen prior to 2013 connection with vacation or vacation transaction or as referrals that had associated phone numbers registered with the

-15-

National Do Not Registry by running a series of database queries and using the Official Federal DNC Database, the industry standard for identifying if a telephone number was on the National Do Not Call Registry more than 30 days before it was called. *See* Woolfson Decl. at ¶¶ 18, 23, 30. Additionally, Mr. Woolfson has identified the telephone carrier for each class member's telephone number on the date of Bluegreen's calls, and Plaintiff is in the process of subpoenaing these carriers for records reflecting whether each telephone number was residential or non-residential when called. Woolfson Decl. at ¶¶ 31-34.

Other courts have accepted similar methodology when certifying TCPA class actions regarding calls to Do Not Call Registry protected numbers. *See, e.g., Cordoba*, 320 F.R.D. at 598; *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 391 (M.D.N.C. 2015) ("As to the NDNC class, Ms. Verkhovskaya determined which of the more than 1.6 million calls in the SSN records were 'connected.' Second, she identified numbers that received more than one connected call in any 12-month period during the class period. Third, she used data from Nexxa, Inc., a vendor that collects data on when individuals registered on the NDNC list, to determine which of these numbers were registered on the NDNC list as of April 1, 2010." (internal annotations omitted)); *Williams v. PillPack LLC*, No. C19-5282 TSZ, 2021 U.S. Dist. LEXIS 27496, at *17 (W.D. Wash. Feb. 12, 2021) (certifying a class of National Do Not Call Registry call recipients); *Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, at *44-45 (N.D. Cal. July 22, 2020) (same); *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-cv-06314, 2018 WL 3707283, at *7-8 (N.D. Cal. Aug. 3, 2018) (same).

<u>Telephone Solicitations</u>. Whether Schumer's calls for Bluegreen constitute "telephone solicitations" will be determined based on Bluegreen's underlying purpose in having Schumer make the calls, regardless of the content of any specific call. *See Golan v. Veritas Entertainment, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) ("the purpose of the calls is the critical issue in this case"); *Chesbro v. Best Buy Stores, LP*, 705 F.3d 913, 917-18 (9th 2012) (citing FCC order: "[A]pplication of the prerecorded message rule should turn, not on the caller's characterization of the call, but on the purpose of the message."); *Bennett v. GoDaddy.com LLC*, No. CV-16-3908, 2019 U.S. Dist. LEXIS 59766, at *18-27 (D. Ariz. Apr. 8, 2019) ("The relevant question is Defendant's *purpose* in initiating the calls" (emphasis in original)). The key evidence of the purpose of the calls will be Bluegreen's and Schumer's

testimony and documents relating to the directions for marketing Bluegreen vacations that Bluegreen provided to Schumer.

Vicarious liability. The issue of whether Bluegreen is vicariously liable for the calls placed by Schumer as part of the Bluegreen campaign is central to this case and is vital to enforcement of the TCPA. Under federal common law principles of agency, a party may be vicariously liable for TCPA violations even if that party did not initiate or make the calls at issue. *See, e.g., Shamblin*, 2015 WL 1754628, at *6; *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1376-77 (S.D. Fla. 2014). When determining the existence of vicarious liability, courts must evaluate "whether the principal had the necessary agency relationship with the direct wrongdoer." *Legg*, 20 F. Supp. 3d at 1377 (citing *Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp.*, 575 F.3d 1180, 1189 (11th Cir. 2009)). The focus is therefore on Bluegreen's conduct, "without concern for any conduct by the class members." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014).

Under any theory of agency, common evidence will be decisive. Specifically, Mr. Johansen will rely on the documents produced by Bluegreen and third parties, along with the testimony of Bluegreen and Schumer relating to the direction provided by Bluegreen in connection with the telemarketing calls, including why and how Bluegreen obtained the telephone numbers that it supplied to Schumer to call and what Schumer said during those calls.

Consent and Established Business Relationship. A defendant is not liable under the TCPA for telemarketing calls placed with the called party's prior express written consent or an established business relationship with the called party. 47 C.F.R. § 64.1200(c)(2)*; id*. at § (f)(5) ("The term established business relationship for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party."); *see Whelpley v. Comenity Bank*, No. 2:18-cv-433-FtM-99MRM, 2018 U.S. Dist. LEXIS 127432, at *9 (M.D. Fla. July 31, 2018) ("[e]xpress consent is not an element of a

plaintiff's prima facie case [under the TCPA] but is an affirmative defense for which the defendant bears the burden of proof.").

In this case, Schumer called more than 13,000 leads whose telephone numbers Bluegreen obtained in connection with a vacation or vacation transaction that occurred prior to 2013, and more than 3,000 leads whose telephone numbers Bluegreen obtained as a referral from someone else.  To date, Bluegreen has not produced or identified any evidence of any writing signed by any of these consumers consenting to be called, or of any subsequent transactions with any of these consumers after the vacation, vacation transaction, or referral during which their telephone numbers were obtained.  Furthermore, as explained above, the ways in which consumer data was acquired was uniform. As such, any finding related to consent will be outcome determinative for all proposed class members.

Additionally, Plaintiff's expert has excluded from the class all calls to any consumer that were made by Schumer after any inbound call from that consumer was received by Schumer. Woolfson Decl. at ¶ 30; *see also Krakauer*, 311 F.R.D. at 398 ("Dish can prove this defense by, for example, offering a comprehensible customer list along with testimony about the list and which calls were to Dish customers; the factfinder could then determine whether those individuals as a group are not entitled to recover because of an EBR. To the extent there are a few situations where individual inquiry into the dates during which Dish is entitled to the EBR defense may be needed or where the parties dispute these dates, these issues appear to be easily manageable.").

Therefore, Bluegreen's prospective consent and established business relationship defenses will be determined based on the common absence of evidence of such defenses for all class members.

<u>Damages</u>. The Plaintiff will be entitled to up to $500 for each negligent violation of the TCPA and treble damages—up to $1,500 for each violation—if Bluegreen's violations were "willful or knowing." 47 U.S.C. § 227(c)(5)). The question of whether Bluegreen's conduct was willful or knowing will be resolved with common proof since it focuses on Bluegreen conduct including what it knew or did in response to myriad consumer complaints. *See, e.g.*, *Krakauer*, 925 F.3d at  661-62 (affirming treble damages award after a jury trial based on the common evidence presented at trial of defendant's conduct).

The common issues in this case accordingly predominate over any individualized issues.

### 2. A Class Action is the Superior Method of Adjudicating the Claims.

The second prong of the analysis under Rule 23(b)(3) requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Class members rarely have an interest in bringing individual TCPA claims against a Bluegreen and are unlikely to have the necessary resources to do so. The damages are rarely high enough to justify the cost of proving their claims, which are most effectively brought *en masse* as a class action. *See McCurley*, 331 F.R.D. at 178-79 ("Courts recognize that given these damages relative to the costs of litigation, a class action is a superior means of adjudicating TCPA claims against a defendant.").

Other judges in this district have agreed when it comes to TCPA claims, indicating that the "large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating" them. *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 691 (S.D. Fla. 2014); *see Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-22330-CIV, 2014 U.S. Dist. LEXIS 177222, at *22-23 (S.D. Fla. Dec. 23, 2014) (citing *C-Mart*).

Just like other courts have determined with respect to TCPA cases, a single litigation of thousands of telemarketing calls at issue is superior to a series of other litigations or to individuals potentially foregoing their claims.  Superiority is therefore satisfied.

### C.      The Proposed Class is Ascertainable.

As the Eleventh Circuit Court of Appeals clarified earlier this month in *Cherry v. Dometic Corp.,* No. 19-13242, 2021 U.S. App. LEXIS 2809 (11th Cir. Feb. 2, 2021):

> Our ascertainability precedents … do not mandate proof of administrative feasibility. A class is "clearly ascertainable" if we are certain that its membership is "capable of being" determined. Ascertain, Webster's New International Dictionary (3d ed. 1993); Ascertainable, Webster's New International Dictionary (3d ed. 1993). But membership can be capable of

determination without being capable of convenient determination. Administrative feasibility is not an inherent aspect of ascertainability…. We hold that administrative feasibility is not a requirement for certification under Rule 23. In doing so, we limit ascertainability to its traditional scope: a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination.

*Id*. at *12-13, 16.

More particularly, a class definition is ascertainable where it is (1) not amorphous or imprecise, but clearly defined, (2) not limited by subjective criteria, but rather objective criteria, and (3) not a fail-safe class, or one defined in terms of success on the merits. *See Mullins v. Direct Dig., Ltd. Liab. Co.,* 795 F.3d 654, 659-60 (7th Cir. 2015); *accord C-Mart, Inc.*, 299 F.R.D. at 687 ("[A] plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable. A vague class definition portends significant manageability problems for the court.").

Here, the proposed class definition is not vague; it identifies a particular group of individuals harmed in a particular way during a specific period of time. It is also not limited by subjective criteria as it can be determined based on Bluegreen's records and publicly available information. And it does not create a fail-safe class – regardless of whether Plaintiff does or does not prevail on his claim, *res judicata* will bar the class members he represents from re-litigating their claims. The proposed class is therefore ascertainable.

## VI.    CONCLUSION

Because the Rule 23 requirements are satisfied, the Plaintiff respectfully requests that the Court: (1) certify the proposed class; (2) appoint the Plaintiff to serve as the class representative; (3) appoint Kaufman P.A. and Paronich Law, P.C. to serve as class counsel; and (4) direct the Plaintiff to submit a proposed notice plan and form of notice within a reasonable time.

Respectfully submitted,

Dated: February 17, 2021

/s/ Avi R. Kaufman
Avi R. Kaufman (FL Bar no. 84382)
kaufman@kaufmanpa.com
Rachel E. Kaufman (FL Bar no. 87406)
rachel@kaufmanpa.com
Kaufman P.A.

400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Anthony I. Paronich (*pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
508.221.1510
E-mail: anthony@paronichlaw.com

*Counsel for Plaintiff and the putative class*